AO 91 (Rev 11/11) Criminal Complaint **AUSA Y. Osirim authorizing**

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Jose Luis Trujillo Molina | ) | Case No. 19-764-M |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 1, 2019** in the county of **Delaware** in the **Eastern** District of **Pennsylvania**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) | Attempted possession with intent to distribute 400 grams or more, that is, approximately 2.2 kilograms, of a mixture and substance containing a detectable amount of 3-methylFentanyl Hydrochloride, a Schedule I controlled substance. |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A) | Possession with intent to distribute 1 kilogram or more, that is, approximately 1,410 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

William J. Farley, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/02/2019

*Judge's signature*

City and state: Philadelphia, PA

Hon. Richard A. Lloret, U S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, William J. Farley, being duly sworn, depose and say:

1. I am a Special Agent with Homeland Security Investigations (HSI), a component of U.S. Immigration and Customs Enforcement and the principal investigative arm of the Department of Homeland Security, and have been so employed since November of 2008. Previously, I was employed by the University of Pennsylvania Police Department detailed to the Drug Enforcement Administration as a Task Force Officer, where I took part in numerous complex narcotics investigations. As a result of my training, education, and experience, I have become familiar with the methods used by individuals to smuggle narcotics into the United States via commercial package delivery services.

2. On April 26, 2019, HSI Special Agents from Memphis, TN notified HSI Special Agents in Philadelphia, PA of the seizure of a FedEx mail parcel containing approximately 2.2 kilograms of fentanyl from Mexico addressed to Jose Miguel LOPEZ of 573 Larchwood Avenue, Upper Darby, PA 19082 (herein the SUBJECT PREMISES). The parcel was transferred to HSI Philadelphia for a controlled delivery.

3. On April 30, 2019, the Honorable Magistrate Judge Richard A. Lloret authorized a search warrant for the Subject Premises as well as a tracking warrant authorizing the use of a GPS tracking device and break wire beacon which would alert special agents and officers via radio signal to the opening of the mail parcel.

4. On May 1, 2019, HSI agents installed a GPS tracking device and break wire beacon in the parcel in anticipation of conducting a controlled delivery of the parcel to the SUBJECT PREMISES. In addition, agents sprayed a substance on the inside of the box that is visible only under infrared light and transfers to whatever it comes in contact with.

1

5.  At approximately 15:27 hours on May 1, 2019, a HSI special agent, acting in an undercover capacity delivered the parcel to the SUBJECT PREMISES. The parcel was received by a resident of the SUBJECT PREMISES, previously identified as Maria CABRERA, and taken inside of the home. The break wire beacon did not alert – indicating to surveilling officers that CABRERA did not open the parcel. At approximately 16:08 hours, a Hispanic male, later identified as Jose Luis Trujillo MOLINA, arrived at the SUBJECT PREMISES in a silver-colored Honda, bearing PA registration KGP-3069. MOLINA walked to the rear of the SUBJECT PREMISES through a driveway and appeared to enter the rear of the residence.

6.  At approximately 20:28 hours, Walter GUSQUI, previously identified as the owner of the SUBJECT PREMISES, arrived on location and parked his silver-colored Honda, bearing PA registration KKF-9920 in the rear of the property. GUSQUI then entered the home. Within minutes of GUSQUI's arrival, the GPS beacon alerted that the package was moving. A moment later, surveilling agents observed GUSQUI exit the front door of the SUBJECT PREMISES for a moment and then go back inside. Moments later, surveillance agents observe MOLINA on the porch with GUSQUI. MOLINA picked up the parcel and carried it down the driveway to the rear of the residence. GUSQUI turned and went back inside of the residence from the entrance on the front porch.

7.  At approximately 20:45 hours, surveilling agents were alerted via radio signal and via text message that the parcel had been opened. At this time, agents and officers executed a search warrant on the SUBJECT PREMISES. Agents responded to the rear of the property where MOLINA was last seen walking with the parcel. Agents located a door near the rear of the property and knocked and announced, "Police Search Warrant." Shortly thereafter agents entered the rear door of the premises and encountered MOLINA who was standing near the base of the

2

steps, a few feet away from the parcel. The parcel was observed on a table and had been opened. MOLINA was taken into custody. An infrared light was scanned over MOLINA's hands which tested positive for the presence of the substance agents sprayed on the inside of the parcel. Based on the fact that continuous surveillance was maintained on the SUBJECT PREMISES from the moment the parcel was delivered until law enforcement officers entered the home, based on the fact that MOLINA was the only person in the rear basement of the SUBJECT PREMISES standing within a few feet of the open parcel, and based on the fact that MOLINA's hands tested positive for the substance sprayed on the inside of the parcel, I have reason to believe that MOLINA is the only person who could have opened the parcel.

8. At this time, it became apparent to agents that the rear bedroom was not accessible to the main living floor of the SUBJECT PREMISES. Agents then entered through the front door of the residence and encountered GUSQUI. A search of the main living floor and upstairs of the SUBJECT PREMISES where GUSQUI and CABRERA resided yielded no contraband.

9. GUSQUI was interviewed by agents and stated in summary that he returned home from work and observed in his living room the parcel addressed to Jose Miguel LOPEZ from Mexico. GUSQUI stated that he then texted a friend, who also lives at the residence, and asked him to tell Jose that a package had arrived for him. GUSQUI stated that he assumed the parcel was intended for Jose, rather than his friend at the residence, because Jose is Mexican and his friend is from Ecuador. GUSQUI stated that his friend did not respond to the text, so GUSQUI went to the rear of the property to tell Jose (MOLINA) that a package had arrived. GUSQUI told Jose (MOLINA) that the package was addressed to Jose LOPEZ from Mexico and asked if it belonged to him. GUSQUI stated that Jose (MOLINA) came to the front porch, used his cellphone's flashlight feature to check the label of the parcel, and then told GUSQUI that the

parcel belonged to him and took the parcel back to the rear of the property. GUSQUI stated that he was not certain of Jose's last name and added that Jose (MOLINA) had only lived in the rear basement bedroom for about six months.

10. At approximately 21:54 hours, GUSQUI's friend, Joselito MATUTE SALAZAR GONZALO arrived on location and stated that he also lives at the SUBJECT PREMISES and that he shares the rear basement room with Jose MOLINA. When first asked who he shared the rear residence with, GONZALO identified his roommate as Jose Luis Trujillo LOPEZ – stating the first name and surname that appeared on the address label of the parcel. GONZALO then showed agents MOLINA's Facebook page in which MOLINA identified himself as Josecito LOPES De La Cruz. GONZALO then showed agents a text message he received from GUSQUI at 20:33 hours telling GONZALO that a package had arrived for a Jose LOPEZ, which GUSQUI had placed on the porch and asking GONZALO to please come and collect it.

11. A search of MOLINA's room in the rear basement apartment revealed numerous packages of suspected narcotics secreted in the box spring of his bed. A field test was later conducted at the HSI Office and all substances recovered from the box spring tested positive for heroin with a collective weight of approximately 1,410 grams. In addition to the narcotics, a scale with white colored residue was also recovered. A search of the back bedroom where GONZALO's personal belongings were gathered yielded no contraband.

12. MOLINA was transported to the HSI Office for processing.

13. WHEREFORE, based upon my training and experience and my knowledge of this investigation, I have probable cause to believe, and do so believe, that Jose Luis Trujillo MOLINA knowingly and intentionally attempted to possess with intent to distribute 400 grams or more, that is, approximately 2.2 kilograms, of a mixture and substance containing a detectable

amount of 3-methylFentanyl Hydrochloride, an analogue of N-phenyl-N-[1-2-phenylethyl)-4-piperidinyl] propanamide, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), (b)(1)(A)(vi); and knowingly and intentionally possessed with intent to distribute 1 kilogram or more, that is, approximately 1,410 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i).

William J. Farley
Special Agent
Homeland Security Investigations

Sworn and subscribed before me
this _2d_ day of May, 2019.

HONORABLE RICHARD LLORET
*United States Magistrate Judge*

5